# EXHIBIT C-1

FILED
7/1/2020 2:30 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

DC-20-08965

CAUSE NO. _____

| | |
|---|---|
| THRYV, INC., | IN THE DISTRICT COURT |
| Plaintiff, | |
| v. | OF DALLAS COUNTY, TEXAS |
| LISTING CENTRAL, LLC, and NICOLE NIXON, an individual, | 134TH JUDICIAL DISTRICT |
| Defendants. | |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

Thryv, Inc. ("Thryv" or "Plaintiff") files this Original Petition for Declaratory Judgment and Application for Temporary and Permanent Injunction against Defendants Listing Central, LLC ("Listing Central") and Nicole Nixon ("Nixon"), individually (together, Listing Central and Nixon are referred to herein as, the "Defendants"), and alleges as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Discovery is intended to be conducted under Discovery Control Plan Level 2, as set forth in the Texas Rules of Civil Procedure.

### II.
### RELIEF REQUESTED

2. Plaintiff seeks monetary relief over $100,000, but not more than $200,000 and non-monetary relief. Tex. R. Civ. P. 47(c)(3).

### III.
### PARTIES

3. Plaintiff Thryv, Inc. is a Delaware corporation with its principal place of business in Tarrant County, Texas.

4. Defendant Listing Central, LLC is a foreign limited liability company organized and existing under the laws of the State of Virginia whose home office address is located at 215 Depot Ct. SE #252, Leesburg, Virginia 20175-3017. Listing Central may be served with process by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079 as its agent for service of process because Defendant Listing Central, LLC engages in business in the State of Texas, but it has not designated or maintained a resident agent for service of process in Texas. The Texas Secretary of State should then forward citation to Listing Central, LLC's manager at its home office address as follows: Nicole Nixon, Listing Central, LLC, 215 Depot Ct. SE #252, Leesburg, Virginia 20175-3017. TEX. CIV. PRAC. & REM. CODE §§ 17.044(A)(1) and 17.045.

5. Defendant Nicole Nixon is an individual residing in Leesburg, Virginia whose home address is 18930 Canoe Landing Ct., Leesburg, Virginia 20176-8218. Defendant Nicole Nixon may be served with process by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079 as her agent for service of process because Defendant Nicole Nixon engages in business in the State of Texas but she has not designated or maintained a resident agent for service of process in Texas. The Texas Secretary of State should then forward citation to Defendant Nicole Nixon at her home address, 18930 Canoe Landing Ct., Leesburg, Virginia 20176-8218. TEX. CIV. PRAC. & REM. CODE §§ 17.044(A)(1) and 17.045.

## IV.
## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter because Defendant has conducted business in Dallas County, Texas, Defendant has contractually agreed to this Court's jurisdiction, and because the amount in controversy is within the jurisdictional limits of this Court.

7. Venue in Dallas County is proper in this case, because the agreement between the parties and the subject of the parties' dispute designates it as such.

## V.
## FACTUAL BACKGROUND

8. Thryv's corporate history consists of several name changes and key acquisitions. Thryv was formerly known as DexYP, which was formerly known as Dex Media, Inc. In 2012, Dex One, Inc. and SuperMedia, LLC were part of a merger that resulted in the formation of Dex Media, Inc.

9. Thryv is a print and digital marketing company that delivers cloud-based business software on a subscription basis as well as a host of marketing products to over 400,000 small businesses in the United States. Thryv provides consumer services through market-leading search, display and social products and connects local businesses to the monthly visitors of DexKnows.com®, Superpages.com® and yellowpages.com search portals. Thryv also continues to publish a print yellow pages directory in most markets, which lists business telephone subscribers alphabetically by the nature of their business or "advertising" classification.

10. Many businesses purchase advertising or enhanced listings in the yellow pages in addition to the basic listing of name, address, and phone number. Thryv has been phasing out print of both business and residential white pages products in many markets as demand for basic name, address, and number listings that are found in white pages has declined substantially. White pages directories simply list individuals and businesses alphabetically by their names.

11. On or about January 14, 2014, Thryv entered into an agreement with Listing Central entitled Listings Provisioning Licensing Agreement in conjunction with its publication of print directories (the "Agreement"). The Agreement provides Thryv with the right, in its sole discretion, to request Subscriber List Information ("SLI") and Updated SLI from Listing Central and include such requested SLI in its printed directories. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by this reference.

12. Paragraph 3 of the Agreement provides, in relevant part, as follows:

> **Provision of Listings information.** Telco agrees to supply Publisher with the names, addresses (including zip codes where available), telephone numbers, and primary advertising classifications (to the extent Telco or Its vendor maintains such classifications) of Telco telephone subscribers contained in Telco's telephone subscriber listing database, or elsewhere, *as requested by Publisher* and such other data as is necessary for complete listing purposes ("Subscriber List Information" or "SLI") and updates to this information ("Updated Subscriber List Information') pursuant to the license granted herein.

*Agreement* ¶3 (emphasis added).

13. As stated in the Agreement, SLI consists of the names, addresses, zip codes, telephone numbers, and primary advertising classifications of Listing Central's subscribers. The SLI that Listing Central has provided to Thryv and its predecessors has been exclusively or almost exclusively basic name and number listings, the information which has historically been published in a white pages directory.

14. While Thryv has exercised its right to request SLI from Listing Central in the past, there is no obligation under the Agreement that it does so. Therefore, as Thryv has transitioned out of publishing basic name and number listings in printed directories, it has chosen not to continue exercising its right to request listings under the Agreement. Thryv has clearly communicated to Listing Central that it is no longer interested in obtaining SLI under the Agreement or providing publication of basic listings in its print or digital directories free of charge.

15. Despite this, beginning around April 2020, Nixon, president and CEO of Listing Central, began a campaign of telephone calls and e-mails to Thryv executives in an apparent attempt to pressure Thrvy to change its position. Additionally, Thryv has learned that Nixon and Listing Central have misrepresented the terms of the Agreement to Listing Central customers and directed customers to contact Thryv and its representatives directly. Listing Central did so despite

having agreements with its customers that Listing Central would serve as the customers' agent for purposes of submission of SLI for directory publication. Listing Central failed to disclose the limitations of the Thryv listing Agreement to its customers. In doing so, Defendants have made materially false and misleading statements regarding Thryv's purported refusal to continue publishing print directories that include Listing Central SLI and Thryv's alleged regulatory or contractual obligation to do so. These false and disparaging statements are damaging Thryv's reputation in the marketplace and are resulting in ongoing harassment of the company, its employees, and its executives.

16. Additionally, Defendants' false statements have resulted in Thryv receiving threats of litigation and other actions from Defendants and their customers based on the refusal to include SLI from Listing Central in Thryv's print directories. Listing Central has made representations about Thryv including false allegations about Thryv's legal obligations in order to pass the blame for Listing Central's inability or unwillingness to continue providing its customers with listing services. These false statements include claims that Thryv is the only remaining publisher of print directories in certain markets and therefore has an obligation to publish SLI.

17. In order resolve the ongoing dispute between Listing Central and Thryv regarding its alleged obligations to publish directory listings under the Agreement or otherwise, Thryv brings this action seeking a declaratory judgment and asserting claims for business disparagement, defamation, injunctive relief, and attorney's fees.

## VI.
## CAUSE OF ACTION – SUIT FOR DECLARATORY JUDGMENT

18. Plaintiff hereby incorporates by reference paragraphs 1-17 as if fully restated herein.

19. As is previously described herein, Thryv is in the business of providing print and digital marketing services to its clients. One component of its business involves the publication of print directories that today primarily serve advertisers in the form of yellow pages. Plaintiff entered into the Agreement with Listing Central in 2014 in order to obtain the right, in its sole discretion, to request SLI from Listing Central to include in certain of its print directories. However, because Plaintiff is in the process of discontinuing the publication of white pages directories in digital and particularly print directories, Thryv no longer has a need to request SLI from Listing Central. Accordingly, Thryv chose not to exercise its rights to do so under the Agreement beginning in 2020.

20. In response, Defendants have claimed that Thryv is obligated to continue to publish SLI provided by Listing Central in its directories pursuant to the terms of the Agreement or Federal law. The Agreement is optional and does not require Thryv to request, obtain, or publish any information from Listing Central. The Agreement merely provides Thryv with a right to request such information and a license to publish such information if it chooses, in Thryv's sole discretion, to do so. Thryv has no legal obligation to publish the SLI of Listing Central. Therefore, Thryv asserts that it has no ongoing obligation to publish any SLI provided by Listing Central.

21. Thryv seeks entry of a declaratory judgment finding that it has no obligation to purchase, obtain, or publish SLI from Listing Central under the Agreement.

22. Thryv seeks relief under the Uniform Declaratory Judgment Act, because Plaintiff and Defendants do not agree as to Thryv's ongoing rights and obligations under the Agreement. As such, there exists an actual controversy relating to the legal rights and duties of Plaintiff and Defendants under the Agreement and the requested declaratory judgment would terminate the controversy and remove uncertainty.

23. All conditions precedent to Plaintiff's suit for declaratory relief have been performed or have occurred.

## VII.
## CAUSE OF ACTION- BUSINESS DISPARAGEMENT

24. Plaintiff hereby incorporates by reference paragraphs 1-23 as if fully restated herein.

25. Defendants have published disparaging statements about Thryv, the Agreement, applicable law, and its relationship with Listing Central in an attempt to manipulate its customer base into joining their campaign to force Thryv to continue the publication of free basic directory listings.

26. Defendants' representations that Thryv has an obligation to publish free directory listings are false both under the terms of the Agreement and applicable law.

27. Defendants have published the statements with the intent of harming Thryv and without privilege.

28. Therefore, Plaintiff seeks damages within the jurisdictional limits of this Court.

## VIII.
## CAUSE OF ACTION- DEFAMATION

29. Plaintiff hereby incorporates by reference paragraphs 1-28 as if fully restated herein.

30. In the alternative, Defendants published statements by oral communication, conduct, and written communications asserting that Thryv has an obligation to publish free directory listings for Listing Central customers under the Agreement and applicable law.

31. These statements were false and Defendants knew they were false when they were made. Plaintiff has no obligation to publish SLI from Listing Central in any print or digital directory.

32. Defendants' statements were extrinsically defamatory to the Plaintiff, because they depicted Thryv as being in violation of regulatory or contractual obligations and as failing to comply with applicable laws. Thrvy's business reputation is critical to the company as it is in the business of working closely with customers to market their own businesses.

33. Defendants' knowingly false statements have damaged Thryv. Plaintiff seeks damages within the jurisdictional limits of this Court.

## IX.
## APPLICATION FOR TEMPORARY INJUNCTION

34. Plaintiff hereby incorporates by reference paragraphs 1-33 as if fully restated herein.

35. Plaintiff's request for injunctive relief is authorized by Chapter 65 of the Texas Civil Practice and Remedies Code in order to stop Listing Central from continuing its disparagement of Thryv.

36. Based on the foregoing allegations and evidence, Plaintiff Thryv requests a temporary injunction be entered prohibiting Listing Central as follows:

   a. From representing that Thryv is obligated to continue to publish SLI provided by Listing Central in its directories pursuant to the terms of the Agreement or Federal law, or from encouraging anyone to do so;

   b. From representing that Thryv has breached the Agreement or violated Federal law, from contacting Thryv regarding the Agreement, or from causing anyone to contact Thryv or its representatives regarding the Agreement;

   c. From making any representation that Thryv is obligated to publish SLI from Listing Central or encouraging anyone to do so; and

        d.     From making any misrepresentation regarding Thryv or its business.

**A.   Thryv Has a Probable Right to Relief.**

37.    Thryv has a probable right to the relief it seeks because it has no obligation to publish SLI from Listing Central under the Agreement.

38.    As is previously discussed herein, the Agreement provides Thryv with the option to obtain and publish SLI from Listing Central, but there is no obligation that it do so. Nor does Thryv have any other obligation to publish white page listings for Listing Central customers.

39.    Notwithstanding, Listing Central has made false claims to customers regarding the nature of the Agreement, Thryv's obligations under the Agreement and Federal law, and the alleged refusal of Thryv to publish advertising for Listing Central customers.

40.    This is resulting in damage to Thryv's reputation as these misrepresentations are repeated in the marketplace. Listing Central's claims about Thryv are false.

41.    For these reasons, Thryv has a probable right to relief and has satisfied the first element necessary to support its request for a temporary restraining order.

**B.   Without a Temporary Restraining Order, Thryv Will Suffer Imminent and Irreparable Harm.**

42.    If Thryv's application is not granted, harm is imminent and certain.

43.    Listing Central cannot be permitted to continue to disparage Thryv in the marketplace. Failure to enter an injunction with result in irreparable harm to Thryv's reputation. *See, e.g., Trevino v. Bd. of Trustees of W. Oso Indep. Sch. Dist.*, 783 S.W.2d 806, 807 (Tex. App.—Corpus Christi 1990, writ dism'd. w.o.j.) (affirming trial court injunction based on a finding of "irreparable harm to … professional reputation").

44.    Furthermore, Thryv has no adequate remedy at law for this kind of ongoing reputational damage. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 3002).

45.     For these reasons, Thryv respectfully requests that this Court enter a temporary injunction as requested above until a trial on the merits can be had.

## X.
## REQUEST FOR PERMANENT INJUNCTION

46.     Plaintiff incorporates all previous allegations as if set forth fully herein.

47.     Thryv asks the Court to set its application for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against the Defendant.

## XI.
## ATTORNEYS' FEES

48.     Based on the acts and/or omissions of Defendants described above, Thryv has retained the services of Sheppard Mullin Richter & Hampton LLP to protect its interests and pursue the foregoing claims against Defendants. Thryv is therefore entitled, pursuant to the terms of the Agreement, the Tex. Civ. Prac. & Rem. Code Ann. § 37.009, and all other applicable law to recover from Defendants its attorneys' fees and costs incurred in connection with this dispute and in pursuing its claims. All conditions precedent to Thryv's recovery of attorneys' fees have been fulfilled by Thryv or have been waived by Defendants' acts and/or omissions.

## XII.
## REQUEST FOR RELIEF

Plaintiff Thryv, Inc. requests that Defendants Listing Central, LLC and Nicole Nixon be cited to appear and answer and that on final trial, Plaintiff has judgment against Defendant for:

1.  Temporary injunction;
2.  Permanent injunction;
3.  Plaintiff's actual damages in a sum within the jurisdictional limits of this Court;
4.  Pre-judgment and post-judgment interest thereon to the extent permitted by law;
5.  Reasonable attorneys' fees and expenses as allowed by law;

6. Costs of suit;

7. Declaratory judgment finding that Plaintiff has no obligation to obtain and publish any information under the Agreement between Thryv and Listing Central nor Federal law; and

Such other and further relief, whether general or special, at law or in equity, to which Plaintiff may be justly entitled and which the Court deems appropriate.

Dated: June 29, 2020

                Respectfully submitted,

                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                By    */s/ Dwight M. Francis*
                       DWIGHT M. FRANCIS
                       Texas Bar No. 00785877
                       AIMEE C. OLESON
                       Texas Bar No. 24036391
                       2200 Ross Avenue, 24th Floor
                       Dallas, Texas 75201
                       Tel. (469) 391-7400
                       Fax (469) 391-7401
                       dfrancis@sheppardmullin.com
                       aoleson@sheppardmullin.com

                ATTORNEYS FOR PLAINTIFF THRYV, INC.

# EXHIBIT A

# LISTINGS PROVISIONING
# LICENSE AGREEMENT

This Listings Provisioning License Agreement (the "Agreement"), dated January 15, 2014 (the "Effective Date"), is made by and between Dex One Service, Inc. and SuperMedia LLC, a Delaware corporation and Delaware limited liability company, on behalf of themselves and all of their affiliates (collectively, "Publisher"), located at 2200 W. Airfield Drive, Dallas, Texas 75261, and Listing Central LLC("Telco"), a limited liability company, located at 1875 I Street, NW, Suite 500, Washington, DC 20006.

1. **Scope and Term.** This Agreement covers the provision of Subscriber List Information and Updated Subscriber List Information (defined below) for Telco. The term of this Agreement shall begin on the Effective Date and shall continue for one year. Unless otherwise terminated as provided herein, this Agreement term shall automatically renew for successive one (1) year terms unless either party provides written notice of termination to the other party not less than ninety (90) days prior to the end of the initial or applicable renewal term.

2. **Termination.** Either party may terminate this Agreement if the other party breaches this Agreement and does not cure such breach within 30 days of written notice. Termination of this Agreement, or any part hereof, for any cause shall not release either party from any liability which at the time of termination has already accrued to the other party or which thereafter accrues in any respect with regard to any act or omission occurring prior to the termination or from an obligation which is expressly stated in this Agreement to survive termination.

3. **Provision of Listings Information.** Telco agrees to supply Publisher with the names, addresses (including zip codes where available), telephone numbers, and primary advertising classifications (to the extent Telco or its vendor maintains such classifications) of Telco telephone subscribers contained in Telco's telephone subscriber listing database, or elsewhere, as requested by Publisher and such other data as is necessary for complete listing purposes ("Subscriber List Information" or "SLI") and updates to this information ("Updated Subscriber List Information") pursuant to the license granted herein.

4. **Fees.** Publisher shall pay to Telco applicable fees as described in Appendix 1.

5. **Requests for SLI and Updated SLI.** Orders for SLI and Updated SLI must be submitted in writing to Telco in a manner agreed to by the parties. Publisher must allow thirty (30) days processing time in advance of the desired date for the information. Each order must specify the date the SLI should be pulled from Telco's database. For the Updated SLI, each order must specify the begin dates and frequency in which the Updated SLI is to be received. Publisher shall also specify on each order the directory names (to the extent available), exchanges, NPA/NXXs, listing types desired, the medium for provision of the listing information, and the address for delivery. All orders shall be subject to the terms of this Agreement. To the extent of any conflict between the terms of this Agreement and any order, the terms of this Agreement shall prevail and govern.

6. **License to Use Listings.** Telco grants to Publisher a non-exclusive, worldwide license ("License") during the initial term and each renewal term of this Agreement to use, copy, modify, display, sublicense, and enhance the Subscriber List Information and the Updated Subscriber List Information solely for the purpose of publishing, marketing, and distributing directories and listings in any medium of Publishers' choice, whether print, electronic or otherwise. This License Agreement applies to and is effective only to those listings contained in Telco's records with respect to business and residence customers and excludes all non-published and non-listed subscribers.

7. **Amendments.** Any amendment, modification, or supplement to this Agreement must be in writing and signed by an authorized representative of each party. The term "this Agreement" shall include only those future amendments, modifications, and supplements that are signed by both parties.

8. **Assignments.** Any assignment by either party of any right, obligation, or duty, in whole or in part, or of any interest, without the written consent of the other party shall be void, except that either party

may, without consent but with written notification, assign all of its rights, and delegate its obligations, liabilities and duties under this Agreement, either in whole or in part, to (i) a parent, subsidiary or affiliate of that party, or (ii) the surviving entity of a merger, consolidation or plan or reorganization in which it participates or to the purchaser of all or substantially all of its assets. The effectiveness of any assignment shall be conditioned upon the assignee's written assumption of the rights, obligations, and duties of the assigning party.

9.   **Authority.** Each person whose signature appears on this Agreement represents and warrants that he or she has authority to bind the party on whose behalf he or she has executed this Agreement. Telco further represents and warrants that it has the right and authority to provide the license granted herein.

10.  **Binding Effect.** This Agreement shall be binding on and inure to the benefit of the respective successors and permitted assigns of the parties.

11.  **Compliance with Laws and Regulations.** Each party shall comply with all federal, state, and local statutes, regulations, rules, ordinances, judicial decisions, and administrative rulings (collectively, "Laws") applicable to its performance under this Agreement.

12.  **Consent.** Where consent, approval, or mutual agreement is required of a party, it shall not be unreasonably withheld or delayed.

13.  **Governing Law/Jurisdiction/Venue/Waiver of Jury Trial.** This Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, validity, execution, interpretation or performance of this Agreement (collectively, "Causes of Action") will be governed by, and construed, interpreted and resolved exclusively in accordance with, the laws of the State of Texas, without regard to its principles of conflicts of law which would require or permit the application of the laws of another jurisdiction All Causes of Action shall be heard and determined exclusively in the state and federal courts of the State of Texas, Dallas County and those courts shall have exclusive jurisdiction over such Causes of Action. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, (i) any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute, and (ii) any right they might have to demand a jury trial. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

14.  **Trademarks and Trade Names.** Nothing in this Agreement shall grant, suggest, or imply any authority for one party to use the name, trademarks, service marks, or trade names of the other for any purpose whatsoever.

15.  **Expenses.** Except as specifically set out in this Agreement, each party shall be solely responsible for its own expenses involved in all activities related to the subject of this Agreement.

16.  **Force Majeure.** In the event performance of this Agreement, or any obligation hereunder, is either directly or indirectly prevented, restricted, or interfered with by reason of fire, flood, earthquake or like acts of God, wars, revolution, civil commotion, explosion, acts of public enemy, embargo, acts of the government in its sovereign capacity, labor difficulties, including without limitation, strikes, slowdowns, picketing, or boycotts, unavailability of equipment from vendor, or any other circumstances beyond the reasonable control and without the fault or negligence of the party affected, the party affected, upon giving prompt notice to the other party, shall be excused from such performance on a day-to-day basis to the extent of such prevention, restriction, or interference (and the other party shall likewise be excused from performance of its obligations on a day-to-day basis until the delay, restriction or interference has ceased); provided however, that the party so affected shall use diligent efforts to avoid or remove such causes of nonperformance and both parties shall proceed whenever such causes are removed or cease.

17. **Notices.**
All notices, requests, demands and other communications relating to this Agreement must be in writing and sent via (i) United States Mail, postage prepaid, return receipt requested; or (ii) by FedEx, UPS, or other nationally recognized commercial carrier, delivery confirmation requested.

All such notices, requests, demands and other communications must be sent to the parties, their successors in interest, or their assigns at the addresses set forth below (or at such other addresses as will be given in writing by either party to the other):

| | |
|---|---|
| If to Telco: | Listing Central LLC<br>ATTN: Nicole Nixon<br>1875 I Street, NW, Suite 500<br>Washington, DC 20006 |
| If to Publisher: | Dex Media<br>ATTN: Mike Konidaris<br>P. O. Box 619810<br>D/FW Airport, TX 75261-9810 |
| With a copy to: | Dex Media<br>ATTN: Executive Vice President –General Counsel<br>2200 W. Airfield Dr.<br>P.O. Box 619810<br>D/FW Airport, TX 75261-9810 |

18. **Headings.** The headings in this Agreement are inserted for convenience and identification only and shall not be considered in the interpretation of this Agreement.

19. **Attorneys' Fees.** If either party commences an action against the other relating to this Agreement including, but not limited to, for failure to abide by any of the terms of this Agreement, the prevailing party in such action will be entitled to recover all costs including, but not limited to, reasonable attorneys' fees associated with the action. Such relief is in addition to any other relief which may be awarded to the prevailing party.

20. **Publicity.** Any news release, public announcement, advertising, or any form of publicity pertaining to this Agreement, provision of services, or association of the parties with respect to provision of the services described in this Agreement shall be subject to prior written approval of both Telco and Publisher.

21. **Regulatory Agency Control.** This Agreement shall at all times be subject to changes, modifications, orders, and rulings by the Federal Communications Commission and/or the applicable state utility regulatory commission to the extent the substance of this Agreement is or becomes subject to the jurisdiction of such agency. If any of the services covered by this Agreement are provided by tariff and the terms of this Agreement conflict with such tariff, then the tariff shall govern.

22. **Severability.** If any provision of this Agreement is held by a court or regulatory agency of competent jurisdiction to be unenforceable, the remainder of the Agreement shall remain in full force and effect and shall not be affected unless removal of that provision results, in the opinion of either party, in a material change to this Agreement. If a material change as described in this paragraph occurs as a result of action by a court, arbitrator or regulatory agency, the parties shall negotiate in good faith for replacement language. If replacement language cannot be agreed upon within a reasonable period, either party may terminate this Agreement without penalty or liability for such termination upon written notice to the other party.

23. **Subcontractors.** Each party may enter into subcontracts with third parties or affiliates for the performance of any of such party's duties or obligations under this Agreement.

24. **Indemnification.**

   A.   Publisher agrees to indemnify, defend, and hold harmless Telco, its affiliates, officers, employees and agents, from and against all losses, claims, demands, damages, expenses, suits, or other actions, or any liability whatsoever, including, but not limited to, costs and attorney's fees, suffered, made instituted, or asserted by any third party arising from Publisher's use of the SLI and Updated SLI; provided that, the foregoing notwithstanding, Publisher shall have no obligation to indemnify, defend or hold harmless Telco, its affiliates, officers, employees and agents to the extent such losses, claims, demands, damages, expenses, suits, or other actions, or any liability whatsoever, including, but not limited to, costs and attorney's fees, results from Telcos' conveyance to Publisher of listings that contain errors/omissions or which should properly be categorized as non-published or non-listed numbers.

   B.   Telco agrees to indemnify, defend and hold harmless Publisher, its affiliates, officers, employees and agents from and against any and all losses, claims, demands, damages, expenses, suits, or other actions, or any liability whatsoever, including, but not limited to, costs and attorney's fees, suffered, made, instituted, or asserted by any third party arising in any manner from: (i) Telco's conveyance to Publisher of listings that contain errors/omissions or which properly should be categorized as non-published or non-listed numbers; (ii) Telco's breach of any provision of this Agreement (including breach of any representation or warranty); and (iii) Telco's violation of any Laws.

   C.   An indemnified party shall promptly notify the indemnifying party of any such claim or legal proceeding and shall cooperate with the indemnifying party (at the indemnifying party's expense) in the handling of such claim, provided, however that the indemnifying party must receive the indemnified party's prior written consent to any settlement that: (i) includes an admission of liability by the indemnified party; (ii) requires payment of any amounts not covered by the indemnifying party's indemnification obligations; (iii) includes actions that affect the indemnified party's rights in or to its intellectual property, (iv) does not include a complete release for the indemnified party. The indemnified party may, at its election and expense, be represented by counsel of its choice and be present at all associated proceedings.

25. **No Waiver.** The failure of either party to insist upon the performance of any provision of this Agreement, or to exercise any right or privilege granted to it under this Agreement, shall not be construed as a waiver of such provision, right or privilege, and the same shall continue in full force and effect.

26. **Limitations of Liability.** Notwithstanding any other provision of this Agreement, neither party will be liable to the other party for any indirect, incidental, consequential, or special damages suffered by such other party (including without limitation damages for harm to business, lost revenues, or lost profits suffered by such other party to the extent comprising indirect, incidental, consequential, or special damages), regardless of the form of action, whether in contract, warranty, strict liability, or tort, including without limitation negligence of any kind whether active or passive, and regardless of whether the party knew of the possibility that such damages could result. Each party hereby releases the other party (and such other party's parents, subsidiaries, and affiliates, and their respective officers, directors, employees, and agents) from any such damages claim.

27. **Entire Agreement.** This Agreement constitutes the entire agreement of the parties pertaining to the subject matter of this Agreement and supersedes all prior or contemporaneous agreements, negotiations, proposals, and representations, whether written or oral, concerning such subject matter. No representations, understandings, agreements, or warranties, expressed or implied, have been made or relied upon in the making of this Agreement other than those specifically set forth herein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective as of the Effective Date.

Listing Central LLC
By: _Nicole Nixon_
Name: _Nicole Nixon_
Title: _President / CEO_
Date: _1/15/2014_

SuperMedia LLC
By: _Gary C. Hruska_
Name: _Gary C Hruska_
Title: _VP-Fulfillment & Print Svcs_
Date: _3-7-14_

Dex One Service, Inc.
By: _Gary C. Hruska_
Name: _Gary C Hruska_
Title: _VP-Fulfillment & Print Svcs_
Date: _3-7-14_

## APPENDIX 1

**PRICING**

| Listing Type | Listing Style | Price |
|---|---|---|
| Residential | Straightline | No Charge |
| Business | Straightline | $.04 |
| Business | Complex (Indents) | $.06 |